UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

A.D.V. (XXX-XX-9769)                 CIVIL ACTION NO. 14-cv-3223

VERSUS                                        JUDGE FOOTE

SOCIAL SECURITY ADMINISTRATION      MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A.D.V. ("Plaintiff") was born in 1970, has a GED, and has worked in the past at jobs such as buffet waitress, restaurant hostess, and retail sales attendant. She last worked in December 2012 and applied for disability benefits soon afterward based primarily on back pain and related limitations.

ALJ Mary Abbondondelo held a hearing and issued a written decision that denied the claim. The Appeals Council denied a request for review, which made the ALJ's decision the final decision by the Commissioner. Plaintiff filed this action to seek judicial review as allowed by 42 U.S.C. § 405(g). She argues that (1) the ALJ did not account for her need to use a cane and (2) improperly relied exclusively on the Medical-Vocational Guidelines. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and this case be remanded for further proceedings.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

    **A. The ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her onset date (step one) and that she suffered from degenerative disc disease of the lumbar spine, spondylosis with myelopathy, spinal stenosis, and obesity, impairments that are severe within the meaning of the regulations (step two) but not so severe as to meet or equal in severity a listed impairment (step three) that would require a finding of disabled without further analysis.

Before going from step three to step four, the ALJ must assesses the claimant's residual functional capacity ("RFC") by determining the most the claimant can still do despite her limitations. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1). The claimant's RFC is used at steps four and five to determine if the claimant can still do past relevant work or adjust to other jobs that exist in the national economy. 20 C.F.R. § 404.1520(e), 404.1545(a)(5).

The ALJ reviewed the medical evidence and testimony and determined that Plaintiff had the RFC to perform a full range of sedentary work. Sedentary work is the least demanding category of work activity recognized by the regulations. It involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling 83-10.

A vocational expert ("VE") was present at the hearing. The ALJ asked the VE if a person with Plaintiff's RFC and other vocational factors could perform any of Plaintiff's past relevant work (step four). The VE testified that all of Plaintiff's past jobs were at the light level, and the ALJ found that Plaintiff could not perform them.

The ALJ then turned to step five, which asks whether the claimant is capable of performing the demands of other jobs that exist in significant numbers in the economy. The Commissioner has the burden at step five and may meet it by looking to the Medical

Vocational Guidelines found at 20 C.F.R. §404, Sub-part P, Appendix 2. The Commissioner may rely <u>exclusively</u> on the Guidelines if (1) the claimant suffers only from exertional impairments or (2) the claimant's non-exertional impairments do not significantly affect her RFC. <u>Id</u>. § 404.1569; <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987). If non-exertional impairments do significantly affect the plaintiff's RFC, the Commissioner may look to the Guidelines for <u>guidance</u> but must also look to expert vocational testimony or other similar evidence to meet the burden of proving that such jobs exist. <u>Fraga</u>, <u>supra</u>.

The ALJ looked to Rule 201.28. It provides that a person is not disabled if she has an RFC to perform the full range of sedentary work, is a younger individual (age 18 - 44), has a high school education or more, and has skilled or semi-skilled non-transferable work experience. (Rule 201.27 provides that the same person, but with unskilled or no work experience, is also not disabled.) The ALJ did not rely on VE testimony at step five. She simply found that Rule 201.28 directed a finding of not disabled.

### B. The Necessity of a Cane

Plaintiff argues that the ALJ's RFC for the full range of sedentary work did not take into consideration the additional limitations caused by her need to use a cane. She makes a similar argument that the ALJ improperly relied exclusively upon the Guidelines when the cane requirement was an added non-exertional impairment that should have triggered the ALJ to look to VE testimony or other evidence about how the cane requirement would affect the number of available jobs.

The ALJ acknowledged that the medical records reveal that Plaintiff has a lengthy history of lower back pain, radiating into her left lower extremity. An MRI of the lumbar spine revealed disc herniation with disc material touching nerve roots. Plaintiff has been treated with Lortab for pain, muscle relaxants, and physical therapy. She has required ER treatment on occasion after exacerbating her back pain while performing housework. Tr. 15.

A treating physician prescribed a rolling walker for Plaintiff. Tr. 255. Another treating physician, Dr. Reddy, prescribed a "walker with seat" in January 2013. Tr. 256. He issued a letter a few months later that stated he had given Plaintiff "a prescription for a walker with a seat." He explained that Plaintiff "has spinal stenosis, so walking longer distances can predispose to a fall." He requested that Plaintiff have a walker with a seat "because she is a fall risk." Tr. 335.

Plaintiff testified at the hearing that she has lower back pain. The transcript indicates that she first said it ran down her right leg and caused numbness in her leg and hand. Plaintiff's attorney later asked a question that described the pain as being in her right leg. Plaintiff responded that the pain was actually in her left leg and side down to her heel area. She described additional problems such as elbow pain, migraines, and side effects from medication. Tr. 34-36.

The ALJ asked about the prescription for a walker with a seat. Plaintiff said she had not yet received it because Medicaid had denied her request. Plaintiff was using a cane at the hearing. When asked if she used it daily, she said: "Yes, I have to." She said she easily loses her balance around the house and has a tendency to fall. The ALJ asked Plaintiff about

her ability to stand. Plaintiff estimated that she could stand no more than about 10 minutes with her cane, only five minutes without it. She said she could walk "probably to that door right there," and "I have to have my cane just to do that." The ALJ asked if Plaintiff continuously used the cane, even to get up from a chair and walk a short distance to another room. Plaintiff said she did. Tr. 37-47.

### C. Impact of Cane on Available Jobs

Social Security Ruling 96-9(p) provides guidance on determining the ability to do other work when the claimant has an RFC for less than a full range of sedentary work. It explains that the rules, such as Rule 201.28 relied on by the ALJ, take administrative notice of the existence of numerous unskilled occupations within each exertional level. For example, a full range of sedentary work includes all or substantially all of approximately 200 unskilled sedentary occupations administratively noticed in the regulations. Thus, if a claimant is able to perform the full range of sedentary work, she is deemed capable of performing most of those 200 jobs, and the Commissioner's step five burden is satisfied.

SSR 96-9(p) explains when one of the findings of fact does not coincide with the criterion of a rule, the rule does not direct a decision. It may, however, be used as a framework for considering the extent of any erosion of the sedentary occupational base. Similarly, the Fifth Circuit has stated that the mere existence of a non-exertional impairment does not preclude reliance on the Guidelines if the impairment does not have a significant effect. Fraga, 810 F.2d at 1304. And an ALJ may rely exclusively on the Guidelines at step

five if the non-exertional impairment does not significantly erode the occupational base. McCuller v. Barnhart, 72 Fed. Appx. 155, 161 (5th Cir. 2003).

SSR 96-9(p) states that there may be "a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded." Where there is "more than a slight impact" on the claimant's ability to perform the full range of sedentary work, the ALJ "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country."

The ruling provides guidelines for evaluating the impact of several common limitations or restrictions. It specifically addresses medically required hand-held assistive devices. First, to find that a device is medically required, there must be medical documentation establishing the need and describing the circumstances for which it is needed (i.e., periodically, all the time, distance and terrain, etc.). The ALJ must consider the particular facts of the case. "For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending and descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded."

The ruling notes that most sedentary work requires only occasional lifting and carrying of light objects, so a person who requires a hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many

sedentary jobs with the other hand.  An example is given of a person who must use a cane because of an impairment that affects one lower extremity such as an unstable knee, but the person has no other functional limitations.  "On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded."  The ruling concludes that it may be especially useful in such situations to consult a vocational resource.

When the ALJ asked the VE about Plaintiff's past jobs, which were all light, she asked about the impact of a worker's need to use an assistive device such as a cane or walker, particularly as to whether the past jobs required having both hands free.  The VE replied that the "DOT doesn't speak to this; from my own experience, having to use a walker or a cane, any kind of mobility-assisted device would probably hinder that person's ability to do a job."  The ALJ then turned to sedentary jobs and asked, without elaboration, "How does an assistive device impact the ability to do a broad range of sedentary jobs?"  The VE answered that they "could be performed at that level ... with an assistive device for mobility."  The ALJ asked if there were jobs that don't require a lot of lifting or moving of objects that might be more appropriate.  The VE gave examples of call-out operator (91 jobs in Louisiana) and surveillance system monitor (76 jobs in Louisiana).  Tr. 57-59.

That was the extent of the discussion at the hearing about the effect of a required cane.  The ALJ, in her written decision, acknowledged that Plaintiff had been prescribed walkers and stated that she was "in agreement with the treating physician that the claimant would

have difficulty at prolonged distances and could be a fall risk." She said this was "confirmed" by Plaintiff's testimony that she could stand for no more than 10 minutes with her cane and five minutes without it. The ALJ then concluded, without explanation: "This is not inconsistent with an ability to perform sedentary work." The ALJ did not specifically include the cane requirement in her RFC, and she did not discuss the VE's testimony about sedentary jobs that might be available despite the cane requirement. Rather, the ALJ relied exclusively on Rule 201.28 without reference to any specific jobs or the potential eroding effect of Plaintiff's cane requirement.

There is ample evidence that Plaintiff requires a cane, if not a walker, and the ALJ appears to have acknowledged that requirement. She did not, however, include such a limitation in her RFC and, more important, she did not account for it in finding at step five that Plaintiff could perform the demands of other jobs. The ALJ could have discussed the specific demands of Plaintiff with respect to her assistive device and perhaps pointed to provisions of rulings such as SSR 96-9(p) that might indicate the number of available jobs was not significantly eroded. Or the ALJ may have presented the VE with specific findings about the extent of Plaintiff's need for an assistive device and asked the VE for opinion evidence about the number of jobs that would remain available despite the additional limitation. No such steps were taken to explain how the need for a cane (1) is not a significant impact on Plaintiff's RFC or (2) does not significantly erode the numbers of sedentary jobs the claimant could perform. The VE did identify two jobs that might suffice, but the ALJ did not rely on that testimony, and the Commissioner's decision "must stand or

fall within the reasons set forth in the ALJ's decision." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000); Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

**Conclusion**

For these reasons, the decision is not supported by substantial evidence. The proper remedy is provided in sentence four of 42 U.S.C. § 405(g), and it is to reverse the Commissioner's decision and remand the case for further proceedings. On remand, Plaintiff and the Agency may further develop the record with respect to Plaintiff's assistive device requirements and any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.")

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and, pursuant to sentence four of 42 U.S.C. §405(g), this case be remanded to the Agency for further proceedings.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of February, 2016.

Mark L. Hornsby
U.S. Magistrate Judge